1

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
THOMAS B. RUPP (Cal. Bar No. 278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| In re:<br><br>SHIFT TECHNOLOGIES, INC., *et al.*,[1]<br><br>Debtors. | Case No. 23-30687 (Lead Case)<br><br>(Joint Administration Requested)<br><br>**FIRST OMNIBUS MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**<br><br>Date: TBD<br>Time: TBD<br>Place: **Tele/Videoconference Appearances Only**<br>    United States Bankruptcy Court<br>    Courtroom 19, 16th Floor<br>    San Francisco, CA 94102 |

---

[1]    The last four digits of Shift Technologies, Inc.'s tax identification number are 5852.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Shift.  The Debtors' service address is 290 Division Street, Suite 400, San Francisco, California 94103.

**NOTICE TO COUNTERPARTIES:**
**This Motion seeks to reject certain leases. A list of the Leases (as defined below) sought to be rejected pursuant to this Motion is annexed hereto as <u>Exhibit A</u>. If you have received this Motion and are a counterparty to a lease with the Debtors in these chapter 11 cases, please review <u>Exhibit A</u> to determine if this Motion affects your leases and your rights thereunder.**

Shift Technologies, Inc. and its affiliates that are debtors and debtors in possession (collectively, "<u>Shift</u>," the "<u>Company</u>," or the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") move this Court pursuant to section 365(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") for the entry of an order, in substantially the form attached hereto as <u>Exhibit B</u>, authorizing the Debtors to (i) reject the leases (collectively, the "<u>Leases</u>") listed on <u>Exhibit A</u> hereto (the "<u>Contract Rejection Schedule</u>"), effective *nunc pro tunc* to the date of the filing of this Motion (the "<u>Petition Date</u>"); and (ii) granting certain related relief. In support of this Motion, the Debtors respectfully represent as follows:

## I.      JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "<u>Bankruptcy Local Rules</u>"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     BACKGROUND[2]

### A.      General Background

On the date hereof (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been

---

[2]      The facts and circumstances supporting this Motion are set forth in the *Declaration of Jason Curtis in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith and incorporated by reference herein.

1   appointed in the Debtors' cases.

2        Prior to the Petition Date, Shift was a consumer-centric omnichannel retailer for buying and

3   selling used cars, with headquarters in San Francisco and operations in Oakland and Pomona,

4   California.  Shift invested significantly in its technology platforms, as well as focusing on finding

5   new ways to expand through investments and mergers, in an attempt to drive growth through

6   volume and presence.  Unfortunately, as Shift continued to expend its available cash on technology

7   development, capital markets in early-mid 2023 tightened and focused on profitability over growth,

8   making it increasingly difficult to find capital to fund growth and operations absent immediate cash

9   returns.  It eventually became apparent that the Company would have significant difficulty

10  continuing to invest in its ecommerce platform.

11       After the Company brought in new management experienced in the car dealership industry

12  in June 2023, Shift decided to pivot entirely to a dealership model focused on profitable growth.

13  By discontinuing its ecommerce investment, Shift's new business model became substantially less

14  capital-intensive.  By that time, however, the Company's liquidity had deteriorated, and Shift

15  needed capital to see the results of the significant changes made to the operations of the business

16  (under the leadership of new management) become profitable.  The Company pursued various

17  potential sources of liquidity during this time, including the holders of the Company's convertible

18  notes and senior unsecured notes as well as other sources of other potential debt and equity

19  investments.

20       Ultimately, the Company was unable to secure any source of additional capital to fund

21  continuing operations.  On October 6, 2023, Shift announced that it would begin an orderly wind-

22  down and liquidation through these Chapter 11 Cases.  That day, the Company closed its website

23  and car lots in Oakland and Pomona and terminated approximately 80% of its workforce.  The

24  remaining 24 employees of Shift are those necessary to facilitate an orderly winddown of the

25  Company's business and liquidation of its assets.  The Debtors filed these Chapter 11 Cases to

26  begin an orderly winddown, using cash on hand and cash generated by the liquidation of inventory

27  through wholesale channels to provide the necessary liquidity to support the winddown and the

28  chapter 11 process.

Additional information regarding the Debtors' businesses and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the First Day Declaration.

**B.      The Debtors' Operations and Leases**

The Debtors operated multiple locations across the United States as part of their omni-channel used car sales strategy.  The majority of these locations stored vehicles that were for sale on the Debtors' platform.  During 2023, in an attempt to reduce losses and focus on their path to profitability, the Debtors restructured, closed unprofitable stores, stopped the development of their capital-intensive dealer marketplace strategy, and reduced expenses, including streamlining their workforce in several rounds of layoffs.  As part of their restructuring, the Debtors closed facilities in California, Florida, Louisiana, Oregon, Texas, Virginia, and Washington.  One of these Leases has expired but the rest remain active and continue to drain cash from the Debtors' estates.  With respect to the Leases in Pomona, California, and Miami, Florida, the Debtors have subleased the properties, and although the subtenants remain on the premises, the Debtors hereby release their leasehold interest in those properties.  The Debtors have exited the premises of each of the other Leases on the Contract Rejection Schedule and have turned over the property to the landlord.

**C.      The Leases to Be Rejected**

The Debtors have reviewed their leases and have considered their cost in the context of the Debtors' reduced operations.  The Debtors have determined that the Leases are unnecessary to the Debtors' ability to administer their estates and/or are burdensome to the Debtors' estates.  Accordingly, the Debtors believe that rejecting the Leases, as described below, will be in the best interests of the Debtors, their creditors, and the estates:

a.  Seven leases for dealership buildings (*e.g.*, showrooms, service facilities) and vehicle lots located in Baton Rouge, Louisiana; San Antonio, Texas; Midlothian, Virginia; Seattle, Washington; Houston, Texas; Whittier, California; and Miami, Florida, that were closed prior to the Petition Date;

b.  One yard lease that the Debtors no longer need in Oakland, California (the "Oakland Lot Lease"); and

c. Three leases that were assigned to third parties prior to the Petition Date for which the Debtors are guarantors located in Merritt Island, Florida, Reno, Nevada and Tampa, Florida. The Oakland Lot Lease is leased by Prologis Mesquite, LLC (the "Oakland Landlord"). The Oakland Landlord also owns and leases the dealership building in Oakland (the "Oakland Building Lease" and jointly with the Oakland Lot Lease, the "Oakland Leases"). The Oakland Leases have cross-default provisions that purport to create an event of default in one lease if the other is breached. Other than these cross-default provisions, the Oakland Leases are separate, fully-integrated agreements with separate purposes and consideration.

The Debtors remain at the Debtors' building in Oakland and do not propose to reject the Oakland Building Lease by this Motion.

By rejecting the Leases, the Debtors estimate that they will save approximately $850,000 for the real property leases in monthly expenses.

## III. RELIEF REQUESTED

The Debtors request entry of an order, in substantially the form attached hereto as Exhibit B, authorizing them to (i) reject the Leases, as more fully set forth on the Contract Rejection Schedule, effective *nunc pro tunc* to the Petition Date; and (ii) granting certain related relief.

## IV. BASIS FOR RELIEF

The Debtors are in the process of evaluating the necessity and cost efficiency of all of their Leases. As part of this process, the Debtors have determined that the Leases listed on the Contract Rejection Schedule are either unnecessary and/or burdensome to the Debtors' estates and should be rejected.

### A. Rejection of the Leases Reflects the Debtors' Sound Business Judgment

Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any . . . executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Bankruptcy Courts generally "approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also Durkin v. Benedor*

1 *Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000); *In re Miller*, 2016 Bankr.
2 LEXIS 1046, at *10 (Bankr. D. Mont. Apr. 1, 2016).

3    The "business judgment" standard is liberal and supports relief on a showing that the debtor
4 has exercised reasonable business judgment in determining that assumption or rejection as
5 requested by the debtor will benefit the debtor's estate. *See Pac. Shores Dev., LLC v. At Home*
6 *Corp. (In re At Home Corp.)*, 292 B.R. 195, 199 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir.
7 2004) ("Bankruptcy courts generally approve rejection if the debtor demonstrates that the rejection
8 will benefit the estate under a 'business judgment' test."); *In re Am. Suzuki Motor Corp.*, 494 B.R.
9 466, 475 n.4 (Bankr. C.D. Cal. 2013). "Courts generally will not second-guess a debtor's business
10 judgment concerning whether the assumption or rejection of an executory contract or unexpired
11 lease would benefit the debtor's estate." *In re MF Glob. Holdings Ltd.*, 466 B.R. at 242; *In re*
12 *Miller*, 2016 WL 1316763, at *4 ("Although . . . business judgment is the proper standard for
13 determining whether to permit assumption or rejection of an executory contract or unexpired lease,
14 the court should focus on the business judgment of the trustee or debtor in possession, not on its
15 own business judgment."). The Court should "presume that the debtor-in-possession acted
16 prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in
17 the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Grp., Inc. (In re*
18 *Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (in the context of a motion to
19 reject under section 365(a)). Only a decision which is "so manifestly unreasonable that it could
20 not be based on sound business judgment, but only on bad faith, or whim or caprice" runs afoul of
21 the rule. *Id.*

22    The Debtors are winding down their operations and liquidating their assets. They have
23 reviewed their leases and have determined that those on the Contract Rejection Schedule no longer
24 bring any benefit to the estate. There is no sound business justification to maintain leases for
25 locations that they are no longer operating or using. Moreover, by rejecting these leases, the
26 Debtors will be saving the estate nearly $850,000 per month. Therefore, the Debtors are well within
27 their business judgment to reject the Leases.

28

1
2
**B.**     <u>Rejection of the Oakland Lot Lease Does Not Constitute a Default of the Oakland Building Lease</u>

3
4
5
By the Motion, the Debtors seek a finding that, notwithstanding the cross-default provisions in the Oakland Leases, the rejection of the Oakland Lot Lease does not breach, terminate, or reject the Oakland Building Lease.

6
7
8
9
10
11
12
13
14
15
16
Cross-default provisions do not impede the rejection of independent contracts or leases. *See, e.g., In re Plitt Amusement Co. of Washington, Inc.*, 233 B.R. 837, 847-48 (Bankr. C.D. Cal. 1999) (analyzing lease under California and Washington law) ("It is well-settled that, in the bankruptcy context, cross-default provisions do not integrate otherwise separate transactions or leases . . . The cross-default provisions must be disregarded in the bankruptcy law analysis because they are impermissible restrictions on assumption and assignment"). The inquiry must be whether the parties intended for the contracts to be so interconnected that "the non-debtor party would not have entered into one agreement without the other." *In re PG&E Corp.*, 2021 Bankr. LEXIS 2464, *16 (Bankr. N.D. Cal. 2021). So long as there are separate, severable agreements, the Debtors "may reject one agreement and not another." *Id.* at *13 (quoting *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996)).

17
18
19
20
21
22
Courts should consider three factors when reviewing cross-defaulted contracts: (1) whether the nature and purpose of the obligations are different; (2) whether the consideration for the obligations is separate and distinct; and (3) whether obligations of the parties are interrelated. *See In re Pollock*, 139 B.R. 938, 940-941 (9th Cir. B.A.P. 1992). Each of these factors dictates that the two Oakland Leases are severable, and that the Oakland Lot Lease can be rejected without rejecting the Oakland Building Lease.

23
24
25
<u>First</u>, the nature and purpose of the Oakland Leases are different: they are separate agreements applying to two separately and clearly delineated pieces of real property; one is an office building and the other is a vehicle lot.

26
27
<u>Second</u>, consideration under each of the Oakland Leases is separate; each Oakland Lease provides for separate and distinct rent and other obligations.

28

<u>Finally</u>, neither Oakland Lease depends on the other with respect to the parties' obligations. The only provisions connecting the two leases is the cross-default provisions. There is nothing in either lease to suggest that one depends on the other. Indeed, the landlord under the Oakland Leases could have leased these properties to distinct lessees without any change in the terms of the agreement, except for removal of the cross-default provision.

The Debtors have exercised their business judgment in determining to reject the Oakland Lot Lease but not the Oakland Building Lease at this time. If the Debtors were forced to either maintain a lease that does not benefit their estate or reject one that is necessary for the estate's continued operation, they would be denied the benefits granted to them by section 365 of the Bankruptcy Code.

For these reasons, the Debtors respectfully submit that the Court disregard the cross-default provision contained in the Oakland Building Lease, hold the provision unenforceable in bankruptcy, and permit the Debtors to reject the Oakland Lot Lease without creating a default under the Oakland Building Lease.

## V. <u>RESERVATION OF RIGHTS</u>

Nothing contained herein is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; or (iv) an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## VI. <u>NOTICE</u>

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Tracy Hope Davis, Esq. and Christina Goebelsmann, Esq.); (ii) the Debtors' secured lender Ally Bank; (iii) the parties listed on the Debtors' consolidated list of thirty (30) largest unsecured creditors in these Chapter 11 Cases; (iv) the non-debtor parties to the Leases; and

(v) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

**VII.**   **NO PRIOR REQUEST**

No prior request for the relief sough herein has been made to this Court or to any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit B</u>, and for such other and further relief.

Dated: October 9, 2023

**KELLER BENVENUTTI KIM LLP**

By: */s/ Jane Kim*

Jane Kim
*Proposed Attorneys for Debtors and
Debtors in Possession*